**JAMES A. SAVILLE, JR.**
**LAUREN E. KOMSA**
**HILL RIVKINS & HAYDEN LLP**
Attorneys for Plaintiff

45 Broadway
New York, New York 10006
(212) 669-0600



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------X

TEXTAINER EQUIPMENT MANAGEMENT  :
LIMITED,  :

         Plaintiff,  :

  - Against -  :

HULL & HATCH LOGISTICS LLC and  :
DOM INTERNATIONAL FZ-LLC  :

        Defendants.  :

------------------------------------X

Index No. 09 civ ( ) **8284**

09 CV 8284

**VERIFIED COMPLAINT**

      Plaintiff, Textainer Equipment Management Limited, by and through its attorneys, Hill

Rivkins & Hayden LLP, as and for its Verified Complaint against the above-named defendants

alleges upon information and belief as follows:

<u>**JURISDICTION**</u>

      1.  This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure and this Court has jurisdiction pursuant to 28 U.S.C. §1333 in that

plaintiff's claim against Defendants arises out of the breach of a container lease agreement, a

maritime contract. *See Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.,*

476 F.Supp. 119, 125 (S.D.N.Y. 1979)(container lease agreement is maritime contract); *Interpool*

*Ltd. v. Ariel Maritime Group, Inc.*, 1991 WL 120364 (S.D.N.Y. 1991) (same) (citing *CTI Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377 (2d Cir.1982)).

## PARTIES

2.  At and during all material times hereinafter mentioned, Plaintiff was and now is a foreign business entity organized and existing by virtue of foreign law with its corporate headquarters at Century House, 16 Par-La-Ville Road, Hamilton HM HX, Bermuda.

3.  At and during all material times hereinafter mentioned, defendant Hull & Hatch Logistics LLC ("H&H") was and now is a foreign business entity organized and existing by virtue of foreign law with an office and place of business at Regional HQ: Suite # 301, III Floor, Office Land Buildings, Karama, Dubai, United Arab Emirates.

4. At and during all material times hereinafter mentioned, defendant Dom International FZ-LLC ("Dom") was and now is a foreign business entity organized and existing by virtue of foreign law with an office and place of business at PO Box 37532, Dom Buildings, Al Quoz, Dubai, United Arab Emirates.

## THE DEFENDANTS CANNOT BE FOUND IN THE S.D.N.Y.

5. This action is brought to obtain jurisdiction over Defendants and to obtain security for any judgment that is eventually entered against the Defendants.

6. After due investigation, Plaintiff respectfully submits that Defendants cannot be "found" in this District for purposes of and as delineated in Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure.

2

7. The instant action arises out of a breach of a container lease agreement under which invoices were submitted and payments by Defendants were required to be made in US Dollars. In fact, previous payments were made in US Dollars and, therefore, Plaintiff believes that Defendants have, or will shortly have, assets within this District, including but not limited to, cash, funds, escrow funds, credits, wire transfer, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and sub-charter hire, at or being transferred and/or wired to, from or through JPMorgan Chase Bank; Citibank N.A.; American Express Bank, Ltd; Bank of America; Bank of New York; Deutsche Bank; HSBC; BNP Paribas; Wachovia Bank; ABN Amro; Standard Chartered Bank; Bank of Communications; The Bank of East Asia; Bank of China; Shanghai Commercial Bank Ltd; Bank of India; Bank of Tokyo-Mitsubishi; Barclays Bank; Calyon; Credit Suisse; Rabobank; Wells Fargo Bank; US Bank; UBS; Nordea Bank Finland PLC; Société Générale; Commerzbank AG; Bank Leumi USA; and DnB NOR Bank; and/or any other garnishee as further investigation may uncover.

8. Plaintiff is not aware of any maritime or statutory bar to the instant attachment.

**BREACH OF MARITIME CONTRACT**

9. On or about June 1, 2008, Plaintiff, on its own behalf and on behalf of undisclosed container owners, as Lessor, and defendants H&H and Dom, jointly and severally as Lessees, entered into a Container Lease Agreement ("the Lease") for the lease by Defendants of certain ocean containers from Textainer. A true and accurate copy of the Lease is attached hereto as Exhibit 1.

10.   Under the terms of the Lease, Defendants were required, *inter alia*, to make monthly payments for the containers which they had on lease. Pursuant to Clause 6, all charges invoiced by Textainer were due and payable within thirty (30) days from the date of invoice. Under Clause 14(a)(i), Lessees' failure to pay any outstanding charge for ten (10) days or more from the date such payment first came due constituted an event of default.

11.   As a result of Defendants' failure to pay invoices in accordance with the terms and conditions of the Lease, on or about September 21, 2009, Textainer sent a Formal Notice of Default & Termination ("the Notice") to Defendants (a) declaring them in default of the Lease; (b) terminating the Lease [in accordance with Clause 14(b)(ii)]; and (c) demanding the return of the leased containers. A true and accurate copy of the Notice is attached hereto as Exhibit 2.

12.   As set forth in Exhibit 2, the total amount of unpaid rental charges currently due and owing to Plaintiff by Defendants is US$91,828.68.

13.   Under Clause 14(c) of the Lease, Textainer is entitled to recover all legal costs, including but not limited to attorneys' fees, and any other expense incurred by reason of any Event of Default. Plaintiff expects to incur $40,000 in attorneys' fees and other costs in connection with this action and the return of the containers. In sum, therefore, Plaintiffs seeks to recover from Defendants, jointly and severally, US$131,828.68.

W H E R E F O R E, plaintiff Textainer Equipment Management Limited prays:

1. That process in due form of law according to the practice of this Court may issue against defendants Hull & Hatch Logistics LLC and Dom International FZ-LLC citing them to appear and answer the foregoing, failing which, a default will be taken against them for the principal amount of the claim, plus interest, costs and attorneys' fees;

2. That if defendants Hull & Hatch Logistics LLC and Dom International FZ-LLC cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, that all assets of defendants Hull & Hatch Logistics LLC and Dom International FZ-LLC up to and including $131,828.68 be restrained and attached, including but not limited to cash, funds, escrow funds, credits, wire transfer, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, at or being transferred and/or wired to, from or through JPMorgan Chase Bank; Citibank N.A.; American Express Bank, Ltd; Bank of America; Bank of New York; Deutsche Bank; HSBC; BNP Paribas; Wachovia Bank; ABN Amro; Standard Chartered Bank; Bank of Communications; The Bank of East Asia; Bank of China; Shanghai Commercial Bank Ltd; Bank of India; Bank of Tokyo-Mitsubishi; Barclays Bank; Calyon; Credit Suisse; Rabobank; Wells Fargo Bank; US Bank; UBS; Nordea Bank Finland PLC; Société Générale; Commerzbank AG; Bank Leumi USA; and DnB NOR Bank and/or other garnishees upon who a Writ of Maritime Attachment and Garnishment may be served; and

3. And for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      September 30, 2009

                    HILL RIVKINS & HAYDEN LLP
                    Attorneys for Plaintiff
                    Textainer Equipment Management Limited

      By:  _____

                    James A. Saville, Jr.
                    Lauren E, Komsa
                    45 Broadway, Suite 1500
                    New York, New York 10006
                    (212) 669-0600

29663/VERIFIED COMPLAINT

**VERIFICATION**

I, James A. Saville, Jr., hereby affirm as follows:

1. I am a member of the firm Hill Rivkins & Hayden LLP, attorneys for plaintiff Textainer Equipment Management Limited. I have prepared and read the foregoing Verified Complaint and know the contents thereof and, the same is true to the best of my knowledge, information and belief.

2. The sources of my knowledge, information and belief are documents provided by our clients and our discussions with them.

3. As plaintiff is a foreign business entity and none of its officers is located in the Southern District of New York, this verification is made by me as counsel of record.

I hereby affirm that the foregoing statements are true and correct.

Dated: New York, New York
       September 30, 2009

_____
James A. Saville, Jr.

Exhibit 1

# tex

## LEASE AGREEMENT
## TERMS AND CONDITIONS

This Lease Agreement, including all attached Schedules, (the "Lease") is made and entered into as of the 1st day of June, 2008 (the "Effective Date"), by and between TEXTAINER EQUIPMENT MANAGEMENT LIMITED, a company incorporated under the laws of Bermuda or its assigns (hereinafter called the "Lessor"), and HULL & HATCH LOGISTICS LLC, a company incorporated under the laws of Dubai, jointly and severally with DOM INTERNATIONAL FZ-LLC, a company incorporated under the laws of Dubai (hereinafter, together, called the "Lessee")

Lessor, acting on its own behalf or on behalf of undisclosed Container owners, shall lease to Lessee, and Lessee shall lease from Lessor, the Containers described in Schedule 1 attached hereto and in any additional schedules which may hereafter be made a part hereof by execution by both Lessor and Lessee and attachment hereto, all upon the terms and conditions set forth herein

---

1     DEFINITIONS

"Build-down Period" means the period designated in any Schedule 1 hereto, extending beyond the termination date of this Lease, wherein the Lessee will continue to be invoiced the charges agreed herein for all Containers remaining On-hire until re-delivered.

"Build-up Period" means an initial period of the Lease wherein Lessee is accepting Containers from Lessor up to a specified minimum number of Containers to be leased under this Lease

"Containers" means the equipment, and any machinery supplied with the equipment, leased to Lessee hereunder and described on any Schedule 1 to this Lease

"Damage" means physical defects in a Container as defined in (a) the current Institute of International Container Lessors' ("IICL") Inspection Guide (for a non-refrigerated Container), or (b) the Container manufacturers' repair, service and maintenance manual s) (for a refrigerated Container), and caused by a single event or a series of single events during the period such Container is On-hire to Lessee, except for Normal Wear and Tear

"Damage Protection Plan" ("DPP") means an optional arrangement whereby Lessor will assume responsibility for some portion of the cost (as set forth in Schedule 2) of repair to any Container damaged while under lease to Lessee.

"Delivery Locations" means those locations, as set forth in Section 4, where Lessee may accept delivery of Containers

"Direct Interchange" means the transfer of Containers from the Lessee to another lessee, in accordance with any Schedule 1 hereto

"Environmental Laws" means, without limitation, any and all state, provincial, municipal, local, national and international laws, regulations, standards or requirements relating to health, safety or pollution or protection of the environment, including, without limitation, those relating to emissions, discharges, spills or other releases or threatened releases of Hazardous Substances into or impacting the environment or natural resources (including, without limitation, ambient air, surface water, groundwater, fresh water, salt water, oceans bays, seas, tidal waters, rivers and their tributaries, lakes, storm drains, sanitary drains or land), or otherwise relating to the manufacture, processing, distribution, use, treatment, recycle, storage, disposal, transport, sale, offer for sale, distribution or handling of Hazardous Substances

"Handling Charges" means charges levied by Lessor based upon movements of the Containers into and out of Lessor's depots

"Hazardous Substances" means those substances, whether waste materials, raw materials, finished products, coproducts, byproducts or any other materials or articles which (during use, handling, process, storage, emission disposal spill, release or any other activity) are regulated by, form the basis of liability under, or are defined as hazardous, extremely hazardous or toxic under any Environmental Laws, including, without limitation, petroleum or any byproducts or fractions thereof, any form of natural gas, asbestos polychlorinated biphenyl, radon or other radioactive substances, infectious carcinogenic, mutagenic or etiologic agents, pesticides, defoliants, explosives, flammables, corrosives, urea formaldehyde, alcohols, chemical solvents pollutants or contaminants or any other material or substance which constitutes a health, safety or environmental hazard to any person, property or natural resource

"In-Service Charges" means all charges incurred in ports, depots, storage areas or otherwise arising out of the use of the Containers, including without limitation, custom charges, wharf fees, all taxes, fees penalties and charges levied on or in connection with the Containers subsequent to delivery, including, without limitation, property sales, use and all further government levies, fees or charges, including without limitation, fines, penalties and interest thereon

"Lease," "herein," "hereunder" or other like words, unless the context otherwise requires, mean and include this Lease Agreement (including all schedules and appendices thereto), as the same may from time to time be supplemented or amended.

"Location Charges" means charges, including but not limited to pick-up, drop-off, Off-hire Service, Direct Interchange and Handling Charges, levied by Lessor whenever any Container is delivered from or returned to a Lessor's depot or to another lessee

"Normal Wear and Tear" means changes to the condition of any Container such as light rust and random small dents and scratches on any side of the Container, consistent with proper treatment and use of a Container under conditions for which it was specifically designed by employing acceptable methods of handling, securing, ground storage, ship stowage and transport. "Normal Wear and Tear" shall not include changes to the condition of any Container which would have been prevented by routine washing and/or lubrication, spot painting, or other normal repair or maintenance, or changes affecting security, water tightness, weather-proof qualities, mechanical and/or electrical function of integral components, the integrity of design or structure, or regulatory, classification or certification requirements, or affecting the inside or outside dimensions or cubic content of a Container (whether or not such changes may threaten the safety of person or property)

"Off-hire Date" means the same date as the Return Date, but

(a)    in the case where a refrigerated Container has been returned with Damage, the "Off-hire Date" shall be the date upon which Lessee has provided written authorization to repair such Container, and

(b)    in the case of any Container which is not returned by Lessee due to such Container having been lost, stolen or damaged beyond repair while in the possession of Lessee, the Off-hire Date shall be the date upon which Lessee has paid the Replacement Value of the Container to Lessor

"Off-hire Service" means a service provided by Lessor wherein any Container subject to this service will be Off-hired as of the Return Date and Lessor will be responsible for the cost of any sweeping of, steam or water cleaning to, and/or label removal from such Container, up to a total of one-half hour of labor time.

"On-hire Date" means the date upon which any Container is delivered to the Lessee by Lessor or Lessor's agent

"Rental Charges" means those charges to Lessee, as specified on any Schedule 1 to this Lease, for the use of the Containers during the period from the On-hire Date through the Off-hire Date

"Replacement Value" means the amount specified in any Schedule 1 to this Lease which Lessor and Lessee agree will equal the cost to Lessee to replace a Container which has been lost, stolen or damaged beyond repair

"Return Date" means the date of physical return of any Container to a depot designated by Lessor

"Return Locations" means depots designated by Lessor where Lessee may return (Off-hire) containers to Lessor

"Vessel" means a ship owned or chartered by the Lessee or any of its subsidiaries or affiliates  The Vessel(s) are detailed on any Schedule 4

2.    TERM

The term of this Lease, except for any Schedule 1 hereto, (the "Term") shall commence on the date first above written and continue indefinitely until amended by mutual agreement of the parties or until terminated by Lessor under the terms of Section 14.  The term of any Schedule 1 hereto (the "Schedule 1 Term") shall be as specified in Part (C) of any Schedule 1 hereto. This Lease and each Schedule 1 Term is non-cancelable and irrevocable, and Lessee's obligations to pay all Rental Charges and other charges with respect to the Containers covered by each Schedule 1 are absolute and unconditional, and shall not be subject to any abatement  reduction, setoff, defense or counterclaim whatsoever.  All claims and liabilities arising out of acts and omissions of Lessee occurring during the Term of the Lease (including, without limitation, Rental Location and Handling Charges, as well as charges for loss or damage to the Containers) shall survive any termination of this Lease.  Moreover, with respect to each and every Container which Lessee has not returned to Lessor prior to the Termination of the Lease, Lessee shall be liable to Lessor as though the Lease were still in effect   This includes, but is not limited to, Lessee's obligations to Lessor under Sections 9, 10 and 12 of this Lease

3.    EQUIPMENT

(a)    This Lease covers the lease of Containers of types as specified in any Schedule 1 to this Lease   This Lease shall apply to all Containers On-hire to Lessee as of the Effective Date and shall also apply to those Containers On-hire on or after the Effective Date

(b)    Lessor represents that all Containers were originally manufactured to ISO specifications and have been treated to meet Australian and New Zealand timber treatment regulations in effect as of the Effective Date of this Lease.

(c)    Lessor represents that as of their On-hire Date, all Containers delivered from Lessor's depots will conform to International Convention for Safe Containers ("CSC") requirements, are plated accordingly  and will have no less than thirty (30) months validity before any re-examination is required

(d)    Lessor has selected the Approved Continuous Examination Program ("ACEP") procedure for reinspection control.

(e)     Lessee agrees to be responsible for the re-examination, including all costs and expenses associated therewith, of the Containers, in accordance with CSC regulations and requirements, both for Containers already on lease, and for those Containers taken on lease subsequent to the Effective Date if such Containers remain On-hire beyond their respective periods of CSC validity

4.     DELIVERY LOCATIONS

Containers shall be delivered from any of Lessor's depots as specified on any Schedule 3, as and when available. Prior notification of Lessee's requirements shall be given to an office or authorized agent of Lessor.

5.     RETURN OF CONTAINERS

In accordance with any Schedule 1 hereto, the Lessee is obligated to return the Containers to the location(s) specified in the corresponding Schedule 3, subject to the maximum return quantities specified in such Schedule 3. Lessor shall not be obligated to accept returns in excess of those specified in such Schedule 3 ("Excess Returns"). For all such Excess Returns which Lessor agrees to accept, Lessee shall pay a fee ("Excess Return Fee") as specified in such Schedule 1. Upon return of the Containers, Lessee will be responsible for the costs of repairing the Containers in accordance with Sections 9 and 10 (subject to the terms of DPP, if any, in effect at Return Date)

6.     BILLING AND PAYMENT

PAYMENT OF ALL CHARGES MUST BE MADE IN ACCORDANCE WITH INSTRUCTIONS STATED ON EACH INVOICE ISSUED BY LESSOR. ALL CHARGES INVOICED BY LESSOR ARE DUE AND PAYABLE WITHIN THIRTY (30) DAYS FROM THE DATE OF EACH INVOICE. IF LESSOR'S INVOICE IS NOT PAID WHEN DUE. LESSOR MAY CHARGE, AS ADDITIONAL RENTAL, A SERVICE CHARGE AT THE RATE OF 1 5% PER MONTH (18% PER ANNUM) ON THE UNPAID BALANCE.

LESSOR'S DEPOTS MAY MAIL OR DISPATCH TO LESSEE INVOICES FOR REPAIR AND OTHER CHARGES FOR THE CONTAINERS. ALL CHARGES INVOICED BY LESSOR'S DEPOTS ARE DUE AND PAYABLE TO SUCH DEPOTS WITHIN THIRTY (30) DAYS FROM THE DATE OF EACH INVOICE. IF SUCH INVOICE IS NOT PAID WHEN DUE AND LESSOR IS REQUIRED TO PAY SUCH INVOICE TO ITS DEPOT ON BEHALF OF LESSEE, LESSOR MAY CHARGE LESSEE, AS ADDITIONAL RENTAL, A SERVICE CHARGE AT THE RATE OF 1 5% PER MONTH (18% PER ANNUM) ON THE UNPAID BALANCE

(a)     Rental, Handling and Location Charges. During the Term, Lessee will be invoiced on a monthly basis for specified Rental, Handling and Location Charges

(b)     Repair Charges. If repairs are required to Containers pursuant to either Section 9 or 10 of this Lease, and Lessee fails to make such repairs, Lessor will charge Lessee and Lessee will pay Lessor all costs and expenses incurred by Lessor in making such repairs

(c)     Replacement Value.  In the event that Lessee shall become responsible under the Lease for the Replacement Value of Containers, Lessor will charge Lessee, and Lessee will pay Lessor for the Replacement Value of such Containers

(d)     In-Service Charges. During the Term, Lessee will be responsible for, and shall pay directly, all In-Service Charges.

7     INSPECTION

Lessee acknowledges that the Containers are in good condition and repair as of the On-hire Date of each Container.

8     EXCLUSION OF WARRANTIES

ALL CONTAINERS ARE LEASED AS IS. AND LESSOR WARRANTS ONLY THAT THEY CORRESPOND WITH THE DESCRIPTION SET OUT IN THE LEASE, AND THAT SO LONG AS NO EVENT OF DEFAULT HAS OCCURRED LESSEE SHALL HAVE QUIET POSSESSION AS AGAINST ANY PERSON CLAIMING UNDER OR THROUGH LESSOR. SAVE AS AFORESAID, NO CONDITION OR WARRANTY WHATSOEVER OF ANY KIND HAS BEEN OR IS GIVEN BY LESSOR IN RELATION TO THE CONTAINERS, AND ALL CONDITIONS AND WARRANTIES IN RELATION THERETO, WHETHER EXPRESSED OR IMPLIED, WHETHER STATUTORY, COLLATERAL HERETO OR OTHERWISE, WHETHER IN RELATION TO THE FITNESS OF THE CONTAINERS OR ANY ITEM THEREOF FOR ANY PARTICULAR PURPOSE, OR IN COMPLIANCE WITH ANY CONVENTION, STATUTE, REGULATION, ORDER OR OTHER PROVISION OF LAW OR STANDARD, OR WHETHER IN RELATION TO MERCHANTABILITY OR AS TO DESCRIPTION, STATE, QUALITY OR CONDITION OF THE CONTAINERS OR ANY ITEM THEREOF AT DELIVERY OR AT ANY OTHER TIME, ARE HEREBY EXCLUDED AND EXTINGUISHED.

9.     OPERATION, MAINTENANCE AND REPAIRS

(a)     Lessee shall, at its sole expense, keep the Containers free from Damage, and maintain the Containers in good order and repair and shall require its sub-lessees (if any) to do likewise, Normal Wear and Tear excepted

(b)     Lessee shall use each Container so as to comply with all loading limitations, handling procedures and operating instructions, and to prevent excessive impact, unbalanced loading, and other hazardous conditions. Lessee shall not use the Containers for storage or transportation of Hazardous Substances or other unsuitable contents which may corrode, oxidize, severely dent, puncture, contaminate, stain or otherwise damage the Containers or be in contravention of any Environmental Laws.

(c)     Except as otherwise provided herein, Lessee shall be liable for all Damage sustained by any Container prior to its return to Lessor, including, without limitation, costs associated with (i) contamination from Hazardous Substances, (ii) removal and disposal of any Hazardous Substances and (iii) the removal and disposal of any Container, or components thereof, affected by Hazardous Substances. Lessee shall not be responsible for such Normal Wear and Tear as may reasonably be expected between delivery of the Containers and their Return Date, or for such Damage as is conclusively shown to have been caused by Lessor.

(d)     All improvements, repairs, accessories, additions and replacements made or attached to any Container by Lessee become fixtures, part of the Container and the property of Lessor without Lessor incurring any liability therefor. Lessee shall make no modifications, improvements, repairs or replacements, nor attach accessories or additions to any Container without the prior written consent of Lessor, except as may be necessary for emergency purposes or to comply with other provisions of the Lease. Such written consent may include such conditions, including but not limited to later restoration of the Container to its prior condition, as Lessor in its sole discretion may require.

(e)     Lessee shall not change or supplement any identification marks on the Containers, including without limitation, letters and numbers, except as may be otherwise required under this Lease or agreed in writing by Lessor. Such agreement may include such conditions including but not limited to Lessee's later restoration of the Containers to their prior condition, as Lessor in its sole discretion may reasonably require. Subject to any such agreement, Lessee, at its sole expense shall keep such marks and the color of the Containers in good condition.

(f)     Lessee shall, at its sole expense comply with all conventions (including CSC), laws, regulations or orders of federal, state, foreign and local governments and agencies which in any way affect any Container or its use, operation or storage or which in any way affect this Lease, and shall be liable for all fines, penalties, fees and interest thereon for failure to comply. Lessor shall have no responsibility for compliance with any such conventions, laws, regulations or orders, including, without limitation, all such conventions, laws, regulations or orders as may relate to customs, transportation, handling, safety, labor regulation, repair and standards.

(g)     Lessee will not, directly or indirectly, create, incur or permit to exist, any security interest, lien, charge or other encumbrance against the Containers. Lessee, at its own cost and expense, will promptly pay, satisfy and otherwise take such action as may be necessary to keep the Containers free and clear of any such encumbrances.

## 10.     RISK OF LOSS AND DAMAGE

Lessee is liable for all loss and Damage to the Containers subsequent to delivery and prior to return to Lessor, regardless of when such loss or damage may be discovered. Lessee is obligated to pay all Rental Charges on lost or damaged Containers until the Off-hire Date of each Container.

(a)     <u>Loss</u>. If a Container is lost, stolen or, in Lessor's sole judgment, damaged beyond economic repair while on lease to Lessee, Lessee shall pay to Lessor the Replacement Value for such Container in accordance with the provisions of the Lease. Loss of a Container includes the Container being held by a third party (including, but not limited to, a governmental entity) after expiration or termination of this Lease with respect to such Container and Lessee's inability or unwillingness to return the Container to Lessor within sixty (60) days after the termination or expiration of the Lease with respect to the Container. Should Lessee return a Container to Lessor after having paid the Replacement Value for such Container to Lessor, Lessor will return such Replacement Value to Lessee, net of any Rental Charges and other charges due on such Container from its Off-hire Date.

(b)     <u>Damage</u>. If a Container is returned to Lessor with Damage. Lessor shall, in its sole discretion, determine whether it is economically feasible to repair such Container.

(i)     If Lessor elects to repair such Container and Lessee or its agent does not authorize the repair of such Container within seven (7) days from Lessee's receipt of the repair estimate, and where Lessee is unable to demonstrate a justifiable reason for such non-authorization, at Lessor's sole option, (1) such Container will be authorized for repair by Lessor on behalf of Lessee and Lessee agrees to pay the cost and expense of such repair ("Repair Charge"), subject to the benefits of any DPP cover provided by Lessor as described in Schedule 2 to this Lease, or (2) such Container will become On-hire again with effect from the Return Date and the Off-hire Date will be the date upon which Lessee or its agent authorizes the repairs to the same Container or Lessor has received the Replacement Value payment for the same Container. Lessor shall have the right to repair such Container or to require Lessee to repair it at any repair facility of Lessor's choice.

(ii)     If, in Lessor's sole judgment, such Container is beyond economic repair, Lessee shall pay to Lessor the lesser of: (1) the estimated cost to repair such Container to current IICL standards, or (2) the Replacement Value for such Container in accordance with the provisions of the Lease, subject, in either case, to the benefits of any DPP cover provided by Lessor as described in Schedule 2 to this Lease. Any such unrepaired Container shall remain the property of Lessor.

(c)     <u>Replacement.</u> In the event of damage, loss or theft of a Container, Lessor may elect, but shall not be obliged, to deliver another Container which it deems of similar type, whereupon this Lease shall apply to such replacement Container.




11.    INTEREST IN LEASE

Notwithstanding any other provisions herein, including without limitation, the definitions and nomenclature used herein, the Lease shall not be deemed a sale or anything other than a lease for any purpose. Lessee shall have no right to sublease the Containers or assign its rights under this Lease, except with the prior written consent of Lessor. In the event of a permitted subletting or assignment, Lessee shall remain personally liable for the payment and performance of all obligations of "Lessee" under this Lease.

12.    INDEMNITY

Lessee hereby agrees to release, protect, defend, indemnify and hold harmless Lessor, its parent, subsidiary and/or affiliate companies, and their respective employees, officers, directors and agents ("Indemnitees") from and against any and all claims, liability, causes of action, damage, loss or expense (including without limitation, expenses in connection with any claim or suit, such as attorneys' fees, court costs and other expenses), including but not limited to claims arising out of  (a) any failure to comply with Lessee's obligations under this Lease, or attempt by any third party, whether private or governmental, to impose upon any Indemnitee liability for Lessee's obligations, (b) any claim, whether private or governmental, for personal injury or death, and for loss or damage to person, property, cargo or vessels arising out of or incidental to the selection, possession, leasing, operation, control, use, storage, loading, unloading, moving, maintenance, delivery or return of any Container; and (c) any forfeiture, seizure or impounding of, or charge or lien on, any Container [each of the foregoing being referred to collectively as "Claims"], whether any Indemnitee is negligent, actively, passively or not at all  or any Indemnitee is alleged or proven to be absolutely or strictly liable, or to have breached any duty or warranty, except to the extent such Claims are shown by final judgment to have been caused by the sole gross negligence or willful misconduct of an Indemnitee  The Indemnitees and Lessee agree that if any court of competent jurisdiction determines that the indemnity required herein exceeds in scope or amount that which is permitted by applicable law, such indemnity shall be construed and enforced to the maximum extent permitted thereby  Each Indemnitee undertakes promptly to give notice to Lessee of any Claims asserted against or incurred by it, but failure to give such notice shall not affect Lessee's obligations under this Section  Lessee agrees not to settle any Claim affecting an Indemnitee without its consent unless such settlement results in a complete release of claims against such Indemnitee without any monetary or other liability

In the event Lessee has not returned all Containers to Lessor by the expiration or termination, as applicable, of this Lease, Lessee will nonetheless indemnify Lessor, as set forth above, as though the Lease were in effect until the date Lessee returns all Containers to Lessor.

13.    INSURANCE

At all times during the Term  Lessee shall at its own expense maintain, or cause its sublessees at their expense to maintain, insurance covering.

        (a)        Broad form comprehensive general liability, including property damage, in amounts not less than specified in Schedule 1

        (b)        All-risks physical damage to the Containers in an amount not less than the Replacement Value of the Containers, covering such Containers while on land, afloat, in transit or at rest anywhere in the world  including Particular Average and General Average.

Satisfactory evidence of such coverage shall be furnished promptly to Lessor upon request  All policies are to be endorsed noting the interest of the Lessor and/or its principals as managers or owners of the Containers and giving Lessor thirty (30) days' written notice prior to any modification or cancellation of such coverages  Within thirty (30) days after execution of this Lease and thereafter at intervals of once every twelve calendar months, certificates indicating such loss payee and additional insured endorsements, executed by an insurance carrier or broker acceptable to Lessor, are to be provided to Lessor or its agents promptly upon request  Lessee shall not use or allow the Containers to be used for any purpose not permitted or covered by the terms and conditions of such insurance policies, or do or allow to be done any act that may invalidate coverage.

14    DEFAULT AND REMEDIES

        (a)        Defaults.  The occurrence of any of the following events shall constitute an event of default hereunder ("Event of Default").

                i)        Lessee shall fail to pay any Rental Charge, Repair Charge, Location Charge or other charges, and such failure shall continue for ten (10) days or more from the date such payment first came due,

                (ii)        Within ten (10) days after notice from Lessor thereof Lessee shall fail to pay any other sum becoming due under this Lease, or Lessee shall fail to cure any other breach of this Lease  or any condition which may jeopardize or adversely affect Lessor's rights in any Containers.

                (iii)        The levy of any distress, execution or other legal process on any Containers,

                (iv)        The entry of any judgment against Lessee in excess of U S  $5,000 which remains unsatisfied for seven (7) days, or the failure of Lessee to comply with the order of any court for seven (7) days

(v)    The filing of any petition in any bankruptcy proceeding, any assignment for the benefit of creditors, appointment of a receiver of all or any of Lessee's assets, entry into any type of liquidation, whether compulsory or voluntary, or the initiation of any other bankruptcy or insolvency proceeding by or against Lessee including, without limitation, any action by Lessee to call a meeting of its creditors or to compound with or negotiate for any composition with its creditors, or

(vi)    The seizure or nationalization of Lessee or any of Lessee's assets by a government or governmental instrumentality.

(b)    <u>Remedies</u>  Upon the occurrence of any Event of Default, and at any time thereafter so long as the same shall be continuing, Lessor may forthwith (but without prejudice to any rights under this Lease), by notice in writing to the Lessee, declare this Lease to be in default and may then exercise any permitted remedy at law or equity, including, without limitation, one or more of the following

(i)    Elect to accelerate all Rental Charges (including amounts previously invoiced but not yet otherwise due) for the full Term to and including the Return Dates set forth in the Lease, causing these Rental Charges to become due and payable immediately for all Containers or if, in Lessor's sole discretion it shall specify that acceleration shall apply only to certain Containers, then only for such Containers thereof as may be specified in such notice, and/or

(ii)    Terminate this Lease with respect to all, or any, of the Containers, whereupon this Lease shall, except as otherwise provided in Section 2, terminate and Lessee shall be bound to return any Container in its possession as soon as possible after termination, in a state of repair satisfactory to Lessor in Lessor's absolute discretion, and to pay within the same time all Rental and other charges due under the Lease, and/or

(iii)    Lessor may utilize such legal remedies as may be available to it, including, without limitation, replevin, injunction or any other provisional remedy designed to obtain possession of or protect the Containers or any items thereof Lessee hereby specifically waives any hearing with respect to any such provisional remedy; and/or

(iv)    Lessor may retake possession of the Containers or any items thereof without resort to judicial process and for such purpose may enter upon any premises belonging to or in the occupation or control of Lessee In that event Lessor shall use reasonable efforts to lease such Containers to others, and Lessee shall be liable for the difference between the Rental Charges due and payable for such Containers under this Lease and the rental charges collected by Lessor upon the leasing of such Containers to others, and/or

(v)    If Lessee fails to return a Container within sixty (60) days after termination of this Lease with respect to such Container, the loss of such Container shall be irrebutably presumed and Lessee shall pay the Replacement Value therefor, plus U S. $400 per Container for relocation/positioning charges, and/or

(vi)    Elect, with effect from the date this Lease is declared in default by Lessor, to charge Lessee as the Rental Charge the post build-down Rental Charge as defined in the related Schedule 1 hereto If no post build-down Rental Charge is shown in such Schedule 1, for purposes of this section 14(b)(vi) the post build-down Rental Charge shall be equal to one and one-half times the Rental Charge specified in such Schedule 1

(c)    Lessee shall indemnify Lessor and its principals and their respective agents in respect of any legal cost and other expense (including without limitation attorneys' fees, court costs, and costs and expenses associated with vessel survey and vessel valuation surveys) incurred by or on behalf of Lessor or its principals by reason of any Event of Default or the exercise of Lessor's remedies with respect hereto, including all costs and expenses incurred in seeking to recover any Container and all Rental Charges, Repair Charges or any other charges of whatsoever kind due in relation to any Container.

(d)    The remedies and other rights set forth in this Section, elsewhere in this Lease or otherwise available to Lessor, are cumulative and not alternative Such remedies and rights may be exercised separately or in any combination or sequence, and the use of any remedy or right individually or in any combination or sequence shall be without prejudice to and shall not waive any others The exercise of any such remedy or right, including, without limitation, termination, shall not relieve Lessee of any liability or obligation under this Lease incurred prior to the exercise thereof

(e)    The termination of this Lease with respect to all, or any, of the Containers shall not relieve Lessee of its obligation to pay to Lessor an Excess Return Charge for such Containers, as specified in the related Schedule 1 hereto  If no Excess Return Charge is shown in such Schedule 1, for purposes of this Section 14(e) the Excess Return Charge shall be equal to U S. $400 for each twenty-foot standard dry freight Container and U S  $800 for all other Containers

15    FORCE MAJEURE

Lessor shall not be liable to Lessee or any other person for any failure or delay in the performance of any obligation hereunder due to events beyond Lessor's reasonable control, including but not limited to fire  storm, flood, accidents, labor disputes (including strikes and lockouts), civil disorder, transportation embargoes or delays, failure of repair facilities to finish repairs, acts of God, government regulations or interferences, or any cause whatsoever not within the sole control of Lessor  No obligation of Lessee hereunder shall be suspended for any reason herein specified, or for any other cause within or outside of Lessee's control



16    FINANCIAL STATEMENTS

Within one hundred twenty (120) days after the close of each fiscal year of Lessee. Lessee shall deliver to Lessor a copy of Lessee's audited financial statements in the English language, including, at a minimum, a balance sheet, income statement, statement of cash flows and all notes and statements attached thereto. Lessor agrees to treat all such financial statements received from Lessee as confidential

17    MISCELLANEOUS

(a)    This Lease is binding upon the parties and their respective heirs, legal representatives, and permitted successors and assigns

(b)    This Lease, together with all schedules appended hereto now or in the future, contains the entire agreement between the parties and this Lease may not be amended, altered, modified or added to except by a writing signed by the parties. Any schedule, or portion thereof, may be amended, altered, modified or added to by Lessor, provided that Lessee is given prior written notice thereof, per the terms on each schedule

(c)    Lessor may assign all or any part of its obligations, right, title or interest in this Lease, including Rental Charges due or to become due

(d)    The Section headings in this Lease are for convenience only and shall not be deemed to alter any provision hereof.

(e)    Except as otherwise set forth in this Lease, all notices required to be given in writing shall be given by hand delivery, registered mail, first class mail, air courier or facsimile transmission to the addressee as shown below or as modified from time to time by Lessor or Lessee by notice given in the manner provided in this paragraph. Notice shall be deemed effective as follows: (1) for hand delivery, the date delivered; (2) for air courier, two business days after sender delivers the notice to the air courier for delivery to addressee; (3) for facsimile transmission, the date the facsimile was sent to addressee; (4) for registered mail, the date signed for by addressee; and (5) for regular mail, five days after deposit in the mails if mailed and delivered within the same country, and ten days after deposit if mailed from one country to another

(f)    In the event that any of the terms and conditions of this Lease are not completed by insertion of the necessary words and/or figures, the parties agree to adopt Lessor's standard terms and conditions for comparable Containers prevailing on the date on which Lessee executes the Lease including without limitation, Rental Charges, penalties for improper return and loss and insurance values.

(g)    Where there are two or more persons who are parties to the Lease as "Lessee" their liabilities under this Lease shall be joint and several

(h)    The provisions of this Lease are severable and any provisions found upon judicial interpretation or construction to be prohibited by law shall be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof.

(i)    No waiver of any remedy or other right under this Lease shall operate as a waiver of another remedy or right, nor shall any single or partial exercise of any remedy or right preclude any other or further exercise thereof or of any other remedy or right.

(j)    References in this Lease to "Lessee" shall be deemed to refer also to Lessee's employees and to Lessee's agents, including without limitation shipping companies, depots and truckers under hire to it. Any action or agreement required of Lessee hereunder may be performed by Lessee's employees or such shipping companies, depots, truckers or other agents, and their actions or omissions to act shall be binding upon Lessee

(k)    This Lease shall be governed by and construed in accordance with the internal laws of the State of California, USA applicable to contracts between residents of California to be performed wholly within California. Lessee agrees that all solely in personam actions or proceedings shall be litigated only in state or federal courts located in California and Lessee hereby consents to the jurisdiction of said courts. Lessee hereby waives personal service of process and consents that all process may be effectively made by any means of written notice allowed in this Lease. Nothing herein shall prohibit or restrict Lessor from commencing an in rem action against Lessee's Vessels in any forum within or outside California, and in the event of such an in rem action, Lessor may add an in personam action even though the same is brought outside of California.

(l)    This Lease is a maritime contract. The Containers furnished to Lessee other than any Containers used by Lessee in a slot charter service, are supplied for use on Lessee's Vessels. In agreeing to this Lease, Lessee is acting on its own behalf, as well as on behalf of its Vessels. The Containers shall be used only in international trade and in connection with contracts for the carriage of goods on ships. Lessee agrees that on each occasion it takes delivery of a Container it does so as an authorized agent of, and on behalf of a Vessel or Vessels. The Containers shall not be used for purposes of inland transport, save that they may be transferred from the shippers' premises directly to the port of exportation and from the port of importation directly to the primary destination or Lessor's appointed depot

(m)    Lessee shall be obliged, upon request by Lessor to immediately specify in writing the Vessel(s) to which Lessor's Containers have been or are to be supplied. Lessee agrees that the supply of Containers to the Vessel or Vessels is essential and necessary for the service provided by those Vessels. Lessor is expressly relying on the credit of the Vessel(s) (as well as the Vessel's pending freight) and Lessee recognizes and grants to Lessor an express maritime lien against each and every Vessel to secure all obligations running from Lessee to Lessor under this Lease. Lessor may execute its maritime lien on any Vessel by appropriate process in any court of any country having general admiralty and maritime jurisdiction, and

Lessee hereby waives any and all objections to an in rem action. Lessee grants to Lessor a legal and an equitable charge on each and every Vessel. Further, the legal and equitable charge, as well as the maritime lien, on any Vessel shall be for the total outstanding obligation of Lessee to Lessor under this Lease.

(n)     Lessee waives any and all rights it may have under the Foreign Sovereign Immunity Act, 28 U.S.C. Section 1602 et seq., including any immunity Lessee may have or claim to have from prejudgment seizure, arrest or attachment.

(o)     When Lessee returns Containers to Lessor, each Container shall be free of debris, shoring and cargo of any type or manner. Lessee shall reimburse Lessor for all costs and expenses, including disposal costs and attorneys' fees, related to appropriate disposal of any such debris, shoring and cargo.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Lease Agreement to be duly executed by their duly authorized officers as of the date first above written.

LESSOR:

TEXTAINER EQUIPMENT
MANAGEMENT LIMITED
Century House
16 Par-la-Ville Road
Hamilton HM HX  Bermuda

BY

TITLE:

DATE:

LESSEE:
JOINTLY AND SEVERALLY,
HULL & HATCH LOGISTICS LLC
301, IIIrd Floor Offices Lands Bldg
Sheikh Rashid Road, Karama Dubai
United Arab Emirates

BY:  MANSOOR HARIS

TITLE:  CEO

DATE:  30.06.2008.

LESSEE:
JOINTLY AND SEVERALLY,
DOM INTERNATIONAL FZ-LLC
PO Box 37532, Dubai UAE
DOM Buildings, Al Quoz
Dubai

BY:

TITLE:

DATE:

NOTIFICATION ADDRESS:
Textainer Equipment Management (U.S.) Limited
650 California Street, 16th Floor
San Francisco, California 94108 U.S.A.


Fax No.  +1-415-434-0599

NOTIFICATION ADDRESS:
HULL & HATCH LOGISTICS LLC
301, IIIrd Floor Offices Lands Bldg
Sheikh Rashid Road, Karama Dubai
United Arab Emirates

Fax No.  +971 4 3346 460

BILLING ADDRESS:
HULL & HATCH LOGISTICS LLC
301, IIIrd Floor Offices Lands Bldg
Sheikh Rashid Road, Karama Dubai
United Arab Emirates

**SCHEDULE 1 - LEASE SCHEDULE NUMBER AFRM5077**
**TO LEASE AGREEMENT TERMS AND CONDITIONS**
**DATED AS OF THE 1ST DAY OF JUNE 2008**

MASTER LEASE
BY AND AMONG
TEXTAINER EQUIPMENT MANAGEMENT LIMITED
AND
HULL & HATCH LOGISTICS LLC.
JOINTLY AND SEVERALLY WITH
DOM INTERNATIONAL FZ-LLC

> This SCHEDULE is a part of the Lease
> and is subject to all of the Terms and Conditions set forth therein.

(A)    CONTAINERS:

This Schedule 1 covers the following types of Containers with the following charges, replacement values and minimum quantities (if applicable):

| Container Type | Original Replacement Value (US$) | Daily Rental Charge (US$) | Daily or Lump-sum DPP Charge (US$) | Excess Return Charge (US$) | Post Build-Down Rental Charge (US$) | Minimum Qty |
|---|---|---|---|---|---|---|
| 20' Standard Dry Freight (2S) | 2400.00 | 0.88 | N/A | 300 | 2.50 | N/A |
| 40' Hi-Cube Dry Freight (4H) | 4100.00 | 1.85 | N/A | 375 | 4.00 | N/A |

(B) BUILD-UP AND BUILD-DOWN PERIOD:

The Build-up Period, is not applicable

The Build-down Period, if applicable, shall be from the 1st day of June 2009 to the 31st day of August 2009.

**SCHEDULE 1 - LEASE SCHEDULE NUMBER AFRM5077**
**TO LEASE AGREEMENT TERMS AND CONDITIONS**
**DATED AS OF THE 1ST DAY OF JUNE 2008**

(C) TERM:

The term of this Schedule 1 to the Lease shall be effective from the 1st day of June 2008 and shall continue until the 31st day of August 2009 or until satisfactory re-delivery of all Containers, as defined in Section 5 of the Lease, whichever occurs later, except that all claims and liabilities respecting each such Container arising out of acts and omissions occurring during the Term shall survive any termination of this Lease.

Each Container On-hire under this Schedule 1 to the Lease shall be subject to a minimum On-hire period of 365 days. Lessee will be responsible for all charges applicable under this Schedule 1 to the Lease for such minimum On-hire period whether or not Lessee is actually in possession of such Container.

Upon termination of this Schedule 1 to the Lease, Lessee shall continue to be invoiced for all charges as agreed herein until all Containers have been re-delivered or until the end of the Build-down Period, whichever is earlier. Containers remaining On-hire beyond the Build-down Period will be charged a post build-down Rental Charge as specified above, which does not include DPP coverage.

(D) RETURN LOCATIONS AND LIMITATIONS

At any Lessor's depot as per Schedule 3, subject to: (i) the maximum monthly return quantities for any one location as per Schedule 3, and (ii) to a worldwide total return quantity (in TEU's) in any month not to exceed ten percent (10%) of the total TEU on hire to Lessee under this Schedule 1 to the Lease as of the end of the previous month. The worldwide total return limitation shall not apply during Build-down Period.

All returns in excess of the maximum, as defined above, or returns to locations not specified in Schedule 3 will be liable to an excess return charge as specified above.

The Lessee is obligated to give the Lessor notice of its intention to return any of the Containers On-hire to the Lessee.

(E) MINIMUM CONTAINER COMMITMENT

If applicable, the minimum quantity of On-hire Containers shall be as indicated in Section (A) above.

**SCHEDULE 1 - LEASE SCHEDULE NUMBER AFRM5077**
**TO LEASE AGREEMENT TERMS AND CONDITIONS**
**DATED AS OF THE 1ST DAY OF JUNE 2008**

(F) INSURANCE

Lessee shall maintain insurance policies providing coverage in the following minimum amounts:

Comprehensive General Liability Insurance, including Contractual Liability, against claims for bodily injury or death and property damage in an amount not less than US $1,000,000 per occurrence; and

All Risks Physical Damage Insurance in an amount equal to the value of the Containers On-hire to Lessee.

The Lessee agrees to provide the Lessor with copies of insurance documents more particularly described in Section 13 of the Lease, and to observe the provisions whereby the policy(ies) note the interest of the Lessor and any other parties designated by Lessor. The Lessee agrees to immediately advise the Lessor should the related insurance arrangements change.

(G) REPLACEMENT VALUE

The Replacement Value of each Container shall be equal to the Original Replacement Value, as shown in Section (A) above, depreciated at a rate of five percent (5%) per annum from date of manufacture. In no event will the Replacement Value be less than sixty percent (60%) of the Original Replacement Value.

(H) BILLING:

(i) During the Term, if no minimum quantity applies Lessor shall invoice Lessee monthly in arrears on the basis of actual Container usage

(ii) If a minimum quantity applies, Lessor shall invoice Lessee monthly in arrears on the basis of actual Container usage during the Build-up and Build-down Periods and outside the Build-up and Build-down Periods for the greater of:

      (a) the minimum quantities specified herein, whether or not such Containers are actually on lease; or

      (b) the number of Containers actually on lease.

(I) DIRECT INTERCHANGE

Under the terms of this Lease, Lessee may interchange Containers to or from other lessees of Lessor, provided; a) prior notification is given in writing to the Lessor; and b) that Lessor and such lessee give written permission on each occasion. Upon a Direct Interchange of a Container the Lessee will be responsible for paying the following charges:

**SCHEDULE 1 - LEASE SCHEDULE NUMBER AFRM5077**
**TO LEASE AGREEMENT TERMS AND CONDITIONS**
**DATED AS OF THE 1ST DAY OF JUNE 2008**

1. Administration Charge of US$ 35.00 per Container;

2. Any lump-sum DPP charge due, in addition to Lessee being responsible for paying charges as set forth in Section (A) above; and

3. Repair Charge of US$ TBA per Container if Lessee is not covered by DPP and transferee is covered by DPP.

(J) OFF-HIRE SERVICE

An additional charge of US$ TBA per returned Container will be levied by Lessor for the provision of this service.

(K) REPAIR AUTHORIZATION

Lessee shall give repair authorization within seven (7) working days after receipt of repair estimate. In the event the repair authorization is not received within seven (7) working days after the receipt of the estimate, Lessor or its designated agent may proceed with repairs on behalf of Lessee.

(L) OTHER

(i) Effective June 1,2008, approximately 643 Containers will be direct interchanged on an "as is, where is" basis to this Schedule 1 to the Lease from the lease agreement by and between Lessor and Megafeeder (Pvt) Limited (herein referenced as "Megafeeder Agreement"). The detailed Container numbers from the Megafeeder Agreement (herein referenced as "Megafeeder Containers") shall be provided by Lessor upon execution by Lessee of this Schedule 1 to the Lease. In consideration of charges accumulated against these approximately 643 Megafeeder Containers. Lessor will issue to Lessee a one-time rental credit in favor of the Lessee for US$ 80,000.00. The terms of Section (I) as set forth hereinabove shall not apply to these Megafeeder Containers.

(ii) Within ten (10) business days of the execution of this Agreement, Lessor will cause to be filed a Stipulation and Order of Dismissal, dismissing Hull & Hatch Logistics LLC with prejudice from the lawsuit entitled *Textainer Equipment Management Limited v. Megafeeder (Pvt) Limited, Forbes Forbes Campbell & Co (Pvt) Limited and Hull & Hatch Logistics LLC*, 07cv9893(JGK) currently pending in the United States District Court for the Southern District of New York  The parties hereto agree that the Stipulation and Order of Dismissal will dismiss only those claims and causes of action asserted by Lessor against Hull & Hatch Logistics LLC in the foregoing action and the parties hereto agree that Lessor's claims against Megafeeder (Pvt) Limited and Forbes Forbes Campbell & Co (Pvt) Ltd. will not be dismissed or otherwise affected.

## SCHEDULE 1 - LEASE SCHEDULE NUMBER AFRM5077
## TO LEASE AGREEMENT TERMS AND CONDITIONS
## DATED AS OF THE 1ST DAY OF JUNE 2008

(iii) Notwithstanding the terms of Section 10(a) of the Lease Agreement Terms and Conditions dated 1 June 2008, if Lessee shall declare a Container as lost, stolen or damaged beyond repair while on lease, Lessee shall provide proof of loss satisfactory to Lessor of such occurrence as Lessor may reasonably request.

LESSOR:

**TEXTAINER EQUIPMENT**
**MANAGEMENT LIMITED**
Century House
16 Par-la-Ville Road
Hamilton HM HX, Bermuda


BY: _____

TITLE: _____

DATE: _____


LESSEE:
*JOINTLY AND SEVERALLY,*
**HULL & HATCH LOGISTICS LLC**
**301, IIIrd Floor Offices Lands Bldg**
Sheikh Rashid Road, Karama Dubai
United Arab Emirates


BY: MANSOOR HARU

TITLE: CEO

DATE: 20.06.2008


LESSEE:
*JOINTLY AND SEVERALLY,*
**DOM INTERNATIONAL FZ-LLC**
PO Box 37532, Dubai UAE
DOM Buildings, Al Quoz
Dubai


BY: MOHAMED HARU

TITLE: DIRECTOR

DATE: _____

**SCHEDULE 2 - LEASE SCHEDULE NUMBER AFRM5077
TO LEASE AGREEMENT TERMS AND CONDITIONS
DATED AS OF THE 1st DAY OF JUNE 2008**

CONTAINER DAMAGE PROTECTION PLAN

This SCHEDULE is a part of the Lease
and is subject to all of the Terms and Conditions set forth therein.

The Lessor shall *not* provide Container Damage Protection Plan coverage under the terms of this Lease.

**LESSOR:**

**TEXTAINER EQUIPMENT
MANAGEMENT LIMITED**
Century House
16 Par-la-Ville Road
Hamilton HM HX, Bermuda

BY: _____

TITLE: _____

DATE: ___2/7/08___

**LESSEE:**
*JOINTLY AND SEVERALLY,*
**HULL & HATCH LOGISTICS LLC
301. IIIrd Floor Offices Lands Bldg**
Sheikh Rashid Road, Karama Dubai
United Arab Emirates

BY: _NANSEL HARU_

TITLE: _CEO_

DATE: _20·06·2008_

**LESSEE:**
*JOINTLY AND SEVERALLY,*
**DOM INTERNATIONAL FZ-LLC**
PO Box 37532, Dubai UAE
DOM Buildings, Al Quoz
Dubai

BY: _____

TITLE: _DIRECTOR_

DATE: _____

**SCHEDULE 3 - LEASE SCHEDULE NUMBER AFRM5077
TO LEASE AGREEMENT TERMS AND CONDITIONS
DATED AS OF THE 1ST DAY OF JUNE 2008
INTERCHANGE/LOCATION CHARGE SCHEDULE**

This SCHEDULE is a part of the Lease
and is subject to all of the Terms and Conditions set forth therein.

Lessor reserves the right to modify this Schedule upon thirty (30) days written notice to Lessee. The monthly depot return limits may not be accumulated from month to month. Additional locations and/or quantities may be offered by Lessor or requested by Lessee based upon local market conditions.

"N/A" indicates equipment may not be returned to the location specified.

Handling in and out charges to be invoiced centrally by Lessor to Lessee at the rates set forth below; per depot movement.

| Location | 20' Containers | 40' Containers |
|----------|----------------|----------------|
| Hong Kong: | US$ 35.00 | US$ 40.00 |
| Japan: | US$ 45.00 | US$ 55.00 |
| All other locations: | US$ 35.00 | US$ 40.00 |

LESSOR:

**TEXTAINER EQUIPMENT
MANAGEMENT LIMITED**
Century House
16 Par-la-Ville Road
Hamilton HM HX, Bermuda

BY: _____

TITLE: _____

DATE: _____ 27 | 08 _____

LESSEE:
*JOINTLY AND SEVERALLY,*
HULL & HATCH LOGISTICS LLC
301. IIIrd Floor Offices Lands Bldg
Sheikh Rashid Road. Karama Dubai
United Arab Emirates

BY: MANSOOR HARU

TITLE: CEO

DATE: 20.06.2008.

LESSEE:
*JOINTLY AND SEVERALLY,*
DOM INTERNATIONAL FZ-LLC
PO Box 37532, Dubai UAE
DOM Buildings, Al Quoz
Dubai

BY: MOHAMED HARU

TITLE: _____

DATE: _____

**SCHEDULE 3 - LEASE SCHEDULE NUMBER AFRM5077**
**TO LEASE AGREEMENT TERMS AND CONDITIONS**
**DATED AS OF THE 1ST DAY OF JUNE 2008**
**INTERCHANGE/LOCATION CHARGE SCHEDULE**

EQUIPMENT TYPE: STANDARD DRY FREIGHT

| | 20' CONTAINERS | | 40' HIGH CUBE | |
|---|---|---|---|---|
| COUNTRY/ CITY | DROP-OFF CHARGE US$ | MAXIMUM QTY PER MONTH | DROP-OFF CHARGE US$ | MAXIMUM QTY PER MONTH |
| **CHINA** | | | | |
| DALIAN | N/A | N/A | NIL | N/A |
| FUZHOU | NIL | 10 | NIL | 3 |
| HUANGPU | NIL | 5 | N/A | 3 |
| MAWAN | NIL | 5 | NIL | 5 |
| NINGBO | NIL | 5 | NIL | 3 |
| QINGDAO | N/A | N/A | NIL | 3 |
| SHANGHAI | NIL | 5 | NIL | 3 |
| TIANJIN | N/A | N/A | NIL | 3 |
| XIAMEN | NIL | 5 | NIL | 3 |
| YANTIAN | NIL | 5 | NIL | 5 |
| **HONG KONG** | | | | |
| HONG KONG | 200 | 3 | NIL | 10 |
| **INDIA** | | | | |
| DELHI | NIL | 15 | N/A | N/A |
| MADRAS | 25 | 10 | 75 | 5 |
| MUMBAI | NIL | 20 | NIL | 15 |
| **INDONESIA** | | | | |
| BELAWAN | 50 | 5 | N/A | N/A |
| JAKARTA | 75 | 5 | 150 | 3 |
| SURABAYA | 50 | 5 | 50 | 5 |
| **JAPAN** | | | | |
| KOBE | 100 | 3 | 250 | 3 |
| NAGOYA | 200 | 3 | 200 | 3 |
| YOKOHAMA | 200 | 3 | 250 | 3 |
| **KOREA** | | | | |
| INCHON | 50 | 5 | 100 | 3 |
| PUSAN | 50 | 10 | 150 | 3 |

Exhibit 2

650 California Street, 16th Floor
San Francisco, CA 94108
U.S.A

*Telephone:*   +1.415.658.8210
*Facsimile*    +1.415.434.9152
*Email*        rgm@textainer.com
               www.textainer.com

# *Fax Transmittal*

**t**
**e**
**x**

| | |
|---|---|
| Date: | 21 September, 2009 |
| To: | Hull & Hatch Logistics LLC, jointly and severally |
| | Dom International FZ-LLC, jointly and severally |
| Fax: | 011-971-4-3346 460 |
| Cc: | David Attenborough |
| No. of Pages: | 2 |
| From: | Richard Murphy, Credit and Legal Department |
| Re | Formal Notice of Default and Termination |
| | Lease Agreement dated as of 1 st June 2008 |

There is an amount of USD 91,828.68 for invoices dating back to March 2009, lawfully due and payable, and detailed on the attached. Our Durban office has received no response from you to several communications regarding your delinquent account. Therefore, in accordance with Clause 14(b) of the subject Lease Agreement we hereby formally place you on notice that you are in default in that you have failed to make timely payment. We hereby terminate the Lease Agreement and demand return of the leased containers in accordance with the terms of the Lease Agreement Schedules.

You are hereby notified that we continue to reserve all rights and remedies that arise under the terms of our Lease Agreement with you, by operation of law or otherwise, and that nothing in this notice should be construed by you as representing any waiver by us of such rights and remedies.

Regards

Richard G. Murphy
V.P. Risk Management
Textainer Equipment Management Limited

| INVOICE | DATE | BILLED | UNPAID |
|---|---|---|---|
| 20090345748 | 31/03/2009 | $23,307.92 | $76.92 |
| 20090450768 | 30/04/2009 | $22,555.20 | $22,555.20 |
| 20090555571 | 31/05/2009 | $23,307.04 | $27.28 |
| 20090661035 | 30/06/2009 | $22,555.20 | $22,555.20 |
| 20090766793 | 31/07/2009 | $23,307.04 | $23,307.04 |
| 20090872550 | 31/08/2009 | $23,307.04 | $23,307.04 |
| TOTAL | | $138,339.44 | $91,828.68 |

P. 1

x x x COMMUNICATION RESULT REPORT ( SEP. 21 2009  2:47PM ) x x x x

FAX HEADER 1
FAX HEADER 2

TRANSMITTED/STORED : SEP. 21. 2009  2:40PM
MODE         OPTION              ADDRESS              RESULT      PAGE
--------------------------------------------------------------------
MEMORY TX                        3346460              OK          2/2

REASON FOR ERROR
  E-1) HANG UP OR LINE FAIL          E-2) BUSY
  E-3) NO ANSWER                     E-4) NO FACSIMILE CONNECTION

TEXTAINER.          650 California Street, 16th Floor          *Telephone:*  +1.415.658.8210
                    San Francisco, CA 94108                   *Facsimile:*  +1.415.434.9152
                    U.S.A.                                    *Email:*  rgm@textainer.com
                                                              www.textainer.com

# *Fax Transmittal*

t
e
x

| | |
|---|---|
| Date: | 21 September, 2009 |
| To: | Hull & Hatch Logistics LLC, jointly and severally |
| | Dom International FZ-LLC, jointly and severally |
| Fax: | 011-971-4-3346 460 |
| Cc: | David Attenborough |
| No. of Pages: | 2 |
| From: | Richard Murphy, Credit and Legal Department |
| Re | Formal Notice of Default and Termination |
| | Lease Agreement dated as of 1 st June 2008 |

There is an amount of USD 91,828.68 for invoices dating back to March 2009, lawfully due and payable, and detailed on the attached. Our Durban office has received no response from you to several communications regarding your delinquent account. Therefore, in accordance with Clause 14(b) of the subject Lease Agreement we hereby formally place you on notice that you are in default in that you have failed to make timely payment. We hereby terminate the Lease Agreement and demand return of the leased containers in accordance with the terms of the Lease Agreement Schedules.

You are hereby notified that we continue to reserve all rights and remedies that arise under the terms of our Lease Agreement with you, by operation of law or otherwise, and that nothing in this notice should be construed by you as representing any waiver by us of such rights and remedies.

Regards

Richard G. Murphy
V.P. Risk Management
Textainer Equipment Management Limited